J-A11012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLENN SHARICE BOLDEN, JR. | : | |
| | : | |
| Appellant | : | No. 743 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 26, 2022
In the Court of Common Pleas of Erie County
Criminal Division at No: CP-25-CR-0002046-2019

BEFORE: BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.: **FILED: November 9, 2023**

Appellant, Glenn Sharice Bolden, Jr., appeals from the May 26, 2022 judgment of sentence imposing an aggregate 84 to 168 months of incarceration for possession with intent to deliver (fentanyl)[1] and other lesser offenses. We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On April 2, 2019, Appellant was pulled over by City of Erie Policer Officer Nicholas Strauch and Corporal John Stephens for having an invalid state inspection sticker. Upon approaching Appellant's car, Officer Stauch and Corporal Stephens smelled marijuana emanating from Appellant's car. Officer Stauch ordered Appellant out of the vehicle. During an attempt to detain Appellant for a safety check, Appellant reached into his waistband

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 Pa.C.S.A. § 780-113(a)(30).

and threw a clear plastic baggie containing a white substance over a fence into the backyard of a residence located at 954 West 28th Street, Erie, Pennsylvania. After Appellant was in handcuffs, Officer Stauch recovered the baggie. The contents of the baggie was identified as containing approximately 25 grams of fentanyl.

Appellant was next transported to the Erie Police Department where Officer Justin Tayler completed Appellant's intake booking sheet. The City of Erie Police Department uses this intake booking sheet with every arrestee. The booking sheet contained customary biographical questions regarding whether the arrestee was taking any medication or if the arrestee was a drug user. Officer Tayler stated these questions are part of the booking process and asked routinely for the health and safety of the arrestee and not intended to elicit criminal responses. When he testified regarding the intake he performed on Appellant, Officer Tayler stated that he asked Appellant if he used drugs and Appellant said "No." Officer Tayler then marked that on the booking sheet.

The booking sheet and the responses provided by Appellant were admitted at trial and now form the basis of Appellant's appeal. At trial, Appellant was charged with possession of fentanyl with intent to distribute it. The Commonwealth advocated that the 25 grams in Appellant's possession were not for personal consumption. Appellant countered that he was in possession of fentanyl for his own use and thus his responses on the booking sheet that he does not use drugs or is not a drug user contradicted his defense.

Trial Court Opinion, 8/15/22, at 3-4.[2]

After a lengthy procedural history, including Appellant's unsuccessful motion *in limine* to exclude his booking sheet from evidence, this matter proceeded to a March 14-15, 2022 jury trial. On March 15, 2022, the jury

_____

[2] The trial court culled its facts from the charging documents and from an audio recording of the trial. *See* Trial Court Opinion, 8/15/22, at 3 n.11. The trial court noted that Appellant did not request transcription of the trial, and the certified record does not contain a trial transcript. We address this problem in the main text.

found him guilty of PWID and other offenses. On May 26, 2022, the trial court imposed sentence as set forth above. This timely appeal followed.

Appellant's sole argument is that he is entitled to a new trial because of the erroneous admission into evidence of his booking sheet. Appellant's Brief, at 7. Appellant claims that his denial that he was using drugs ended up incriminating him, since his defense to PWID was that the drugs in his possession were for personal use. Further, the booking officer did not first provide **Miranda**[3] warnings.

Before we address the merits,[4] we consider the trial court's findings, in its Pa.R.A.P. 1925(a) opinion, as to the state of the record. The trial court

_____

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[4] **Miranda** warnings are required when police subject a suspect to custodial interrogation. **Commonwealth v. Jasper**, 587 A.2d 705, 709 (Pa. 1991). There is no dispute that Appellant was in custody during the completion of his booking sheet. The parties dispute whether he was interrogated. Interrogation includes "any words or actions on the part of the police […] that the police should know are reasonably likely to elicit an incriminating response from the suspect." **Rhode Island v. Innis**, 446 U.S. 290, 301 (1980). Biographical information, such as "name, height, weight, residence, occupation, etc. is not the kind of information which requires **Miranda** warnings since it is not information generally considered as part of an interrogation." **Jasper**, 87 A.2d at 708-09. Routine booking questions are not considered interrogation because they are not calculated or expected to elicit an incriminating response. **Commonwealth v. Davis**, 331 A.2d 406, 407 (Pa. 1975).

We have uncovered no caselaw addressing a booking sheet that asks the defendant about drug use. We observe that this question, unlike questions about height, weight, residence, and occupation, can elicit an incriminating response. And admission from the defendant that he or she uses a controlled
*(Footnote Continued Next Page)*

noted that Appellant did not order a copy of the transcripts, as required by Pa.R.A.P. 1911(a).[5]  Trial Court Opinion, 8/15/22, at 3 n.10.  The trial court therefore recommended that appellate relief be denied on that basis.  *Id.* at 5.  The court relied on an audio recording of the trial to prepare a merits opinion in the event that this Court decided to conduct appellate review without the benefit of a complete record.  *Id.* at 3 n.11.

In considering this issue, we are mindful of the following:

> The fundamental tool for appellate review is the official record of the events that occurred in the trial court.  To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court.  The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal.  Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue.  In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record.  The emphasis on the certified record is necessary because, unless the trial court certifies a document as

---

substance can indeed be incriminating.  But for the reasons explained in the main text, this issue is presently unreviewable.

[5] Rule 1911(a) provides:

> **(a) General rule.** The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 4001 et seq. of the Pennsylvania Rules of Judicial Administration.

Pa.R.A.P. 1911(a).

part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record. Simply put, if a document is not in the certified record, the Superior Court may not consider it.

***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) (citations omitted), ***appeal denied***, 916 A.2d 632 (Pa. 2007). When an Appellant fails to order necessary transcripts, any issue that cannot be resolved without reference to the missing transcripts is waived for purposes of appeal. ***Id.*** at 7.

As things stand, we have no record of the parties' litigation of Appellant's motion *in limine* to exclude the booking sheet. Further, the record is not sufficient to facilitate review of whether the asserted error was prejudicial. In its brief, the Commonwealth presents what appears to be a formidable argument that the admission of the booking sheet, even if erroneous, was harmless.[6] The Commonwealth claims that its witnesses established that

_____

[6] The law of harmless error is as follows:

> Not all errors at trial, however, entitle an appellant to a new trial, and [t]he harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial.... Harmless error exists when, *inter alia*, the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence.

> Harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial

*(Footnote Continued Next Page)*

Appellant was found in possession of more than 26 grams of fentanyl, or roughly 520 single doses. An average user would purchase one-half to one gram of fentanyl at a time. The Commonwealth posits that the amount of fentanyl Appellant had with him, along with packaging and paraphernalia, firmly establishes Appellant's intent to deliver, regardless of the booking sheet. Commonwealth's Brief at 5. In addition to the absence of a complete record, Appellant did not address harmless error in his opening brief and did not file a reply brief.

Likewise, Appellant's brief does not address the trial court's findings regarding the incomplete record. He does not dispute that he never ordered transcripts in accord with Rule 1911. The certificate of transmittal of the record[7] reflects that "0 Transcripts" were included. Thus, Appellant clearly was aware of the problem but took no action to address it. He did, however, file a reproduced record containing excerpts of both days of trial. Part one of the reproduced record includes a transcript whose title page describes it as "Jury Trial Day 1 (Excerpts of Testimony of Patrolman Nicholas Strauch, Patrolman Justin Taylor, Corporal John Stephens and Brent Taylor)." This

---

where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt.

***Commonwealth v. Lewis***, 39 A.3d 341, 351 (Pa. 2012) (internal citations and quotation marks omitted), ***appeal denied***, 51 A.3d 838 (Pa. 2012).

[7] ***See*** Pa.R.A.P. 1931.

volume does **not** record the litigation of Appellant's motion *in limine* to exclude the booking report which, according to the trial court, occurred at the beginning of the first day of trial. Part two of the reproduced record contains a volume titled "Jury Trial Day 2 (Excerpt of the Testimony of Detective Michael Suchy)." Appellant does not explain when these transcripts were prepared, why they were limited to excerpts, or why they were never filed of record. As we explained in **Preston**, documents not included in the certified record do not exist for purposes of appellate review. **Preston**, 904 A.2d at 7.

Where there is some evidence that a document exists but was inadvertently omitted from the record, this Court may make an informal inquiry as to its status and perhaps request a supplemental record or remand for a determination of whether the missing items can be located. **Id.** at 7-8. But in the absence of any indication that a document exists, it is not incumbent upon the appellate court to search for it. **Id.** Because we have no indication that complete transcripts ever were requested or prepared in this case, Appellant's argument is unreviewable.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

11/9/2023